1
2
3
4
5
6
7
8
9
10
11
12

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

13   EDWARD B. HAMILTON, et al.,                    CASE NO. CV F 10-1740 LJO SKO

14              Plaintiffs,                    **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
                                             **MOTION TO DISMISS**
15        vs.                                 (Doc. 8.)

16   BANK OF BLUE VALLEY, et al,

17              Defendants.
     _____/
18

19                              **INTRODUCTION**

20          Defendants JP Morgan Chase Bank, N.A. ("Chase") and Mortgage Electronic Systems, Inc.

21   ("MERS") seek to dismiss as legally and time barred plaintiffs Edward Hamilton ("Mr. Hamilton") and

22   Anne Marie Hamilton's ("Mrs. Hamilton's") claims arising from foreclosure of their Oakhurst,

23   California residence ("property").  Mr. and Mrs. Hamilton appear to chiefly oppose dismissal in that

24   Chase and MERS (collectively "defendants") did not respond to Mr. and Mrs. Hamilton's request for

25   documents and do not "own" the property to permit foreclosure.  This Court considered defendants'

26   F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the November 1, 2010 hearing,

27   pursuant to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES this action

28   against defendants.

                                             1

# BACKGROUND

## Mr. And Mrs. Hamilton's Loan And Default

On August 19, 2005, Mr. and Mrs. Hamilton borrowed $275,000 under a promissory note to purchase the property. To secure the loan against the property, Mr. and Mrs. Hamilton executed a Deed of Trust ("DOT"), which was recorded on August 30, 2005.[1] The DOT identifies defendant Bank of Blue Valley ("Blue Valley") as lender, Orange Coast Title as trustee, and MERS as beneficiary and the lender's nominee.

On May 6, 2010, a Notice of Default and Election to Sell Under Deed of Trust was recorded to reflect that Mr. and Mrs. Hamilton were $10,489.67 in arrears as of May 5, 2010. By a May 18, 2010 Assignment of Deed of Trust, the record interest under the DOT was assigned to Chase. By a June 7, 2010 Substitution of Trustee, Quality Loan Service Corp. ("Quality") substituted as DOT trustee. On August 12, 2010, Quality recorded a Notice of Trustee's Sale to set a September 1, 2010 public auction sale of the property. The property was sold, and a Trustee's Deed Upon Sale was recorded on September 21, 2010.

## Mr. And Mrs. Hamilton's Claims

On August 23, 2010, Mr. and Mrs. Hamilton filed their operative complaint ("complaint") in Madera County Superior Court to allege claims that defendants violated federal and state statutes and to seek to quiet title in their favor in the property and to enjoin a foreclosure sale of the property. The complaint's claims are entitled:

1.    "Violation of the Rosenthal Fair Debt Collection Practices Act under California Civil Code § 1788";

2.    "Quiet Title";

3.    "Predatory Lending Practices";

4.    "Declaratory Relief"; and

---

[1] Documents pertaining to Mr. and Mrs. Hamilton's loan and default were recorded with the Madera County Recorder.

1     5.    "Injunctive Relief."[2]

2    Defendants removed the action to this Court.

3

## DISCUSSION

4

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

5    Defendants attack the complaint's failure "to allege facts sufficient to constitute any viable cause

6    of action" given the absence of a "factual basis for any of [its] loosely asserted claims."  Defendants

7    further take issue with Mr. and Mrs. Hamilton's failure to tender amounts owed under the loan to bar

8    their challenges to the foreclosure sale.

9    A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

10    forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

11    of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

12    whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

13    support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

14    *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

15    there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

16    cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

17    *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

18    In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

19    most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

20    whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

21    *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

22    true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

23    *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court

24    "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel.*

25    *Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the

26    [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways

27

28        [2]     The complaint's claims will be discussed in greater detail below.

1    that have not been alleged." *Associated General Contractors of California, Inc. v. California State*

2    *Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt

3    to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd.*

4    *v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

5        "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

6    allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

7    than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

8    *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

9    Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

10   plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

11   *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

12   direct or inferential allegations respecting all the material elements necessary to sustain recovery under

13   some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

14   *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

15       In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

16   explained:

17           To survive a motion to dismiss, a complaint must contain sufficient factual
         matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A
18       claim has facial plausibility when the plaintiff pleads factual content that allows the court
         to draw the reasonable inference that the defendant is liable for the misconduct alleged.
19       . . . The plausibility standard is not akin to a "probability requirement," but it asks for
         more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

20

21       After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

22   to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

23   content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

24   *Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

25       The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

26           First, the tenet that a court must accept as true all of the allegations contained in
         a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
27       a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
         only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
28       . Determining whether a complaint states a plausible claim for relief will . . . be a

4

context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their

/ / /

/ / /

/ / /

5

1    claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3]   A "court may disregard

2    allegations in the complaint if contradicted by facts established by exhibits attached to the complaint."

3    *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning*

4    *v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).   Moreover, "judicial notice may be taken

5    of a fact to show that a complaint does not state a cause of action."   *Sears, Roebuck & Co. v.*

6    *Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los*

7    *Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).   A court properly may take judicial notice of matters of

8    public record outside the pleadings'" and consider them for purposes of the motion to dismiss.  *Mir v.*

9    *Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

10        As discussed below, the complaint is subject to dismissal in the absence of claims supported by

11   a cognizable legal theory or sufficient facts alleged under a cognizable legal theory.

12                        **Failure To Satisfy F.R.Civ.P. 8**

13        Defendants globally attack the complaint and criticize its lumping "all defendants together

14   without explaining what roles and actions each Defendant took" to fail to satisfy F.R.Civ.P. 8 notice

15   requirements.  Defendants challenge the complaint's five broad claims plus "several additional causes

16   of action embedded within the Complaint" to result in "incoherent and unintelligible" pleading rendering

17   "impossible to even ascertain what Plaintiffs are alleging."

18        Mr. and Mrs. Hamilton fail to respond to defendants' F.R.Civ.P. 8 challenges.

19        Defendants are correct that the complaint fails to satisfy requirements of F.R.Civ.P. 8, which

20   requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying

21   the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista*

22   *v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

23        F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct."  This requirement

24   "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)."

25   *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).  "Something labeled a complaint but written

26

27        [3]        "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
     depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
28   dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document
     in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

The complaint fails to satisfy F.R.Civ.P. 8. The complaint makes references to various federal and California statutes and legal theories but lacks facts to support claims or valid, cognizable legal theories. The complaint lacks specific, clearly defined allegations as to defendants. The complaint fails to give defendants fair notice of claims plainly and succinctly to warrant dismissal of this action against defendants.

### Failure To Tender Indebtedness

Defendants contend that Mr. and Mrs. Hamilton's failure to tender, and apparent inability to tender, the amount owing on their loan dooms their global claims. Plaintiffs respond that "to require the borrower to tender the entire loan amount would make any action against DEFENDANTS . . . virtually

7

immune from penalty for misconduct and overreaching."

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495). Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at118, 92

Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200

1    Cal.App.3d at 1165, 246 Cal.Rptr. 421.

2        Turning to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., the "voiding of a

3    security interest may be judicially conditioned on debtor's tender of amount due under the loan."

4    *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

5        15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded

6    effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the
> obligor any money or property given as earnest money, downpayment, or otherwise, and
> shall take any action necessary or appropriate to reflect the termination of any security
> interest created under the transaction. If the creditor has delivered any property to the
> obligor, the obligor may retain possession of it. Upon the performance of the creditor's
> obligations under this section, the obligor shall tender the property to the creditor, except
> that if return of the property in kind would be impracticable or inequitable, the obligor
> shall tender its reasonable value. Tender shall be made at the location of the property or
> at the residence of the obligor, at the option of the obligor. If the creditor does not take
> possession of the property within 20 days after tender by the obligor, ownership of the
> property vests in the obligor without obligation on his part to pay for it. The procedures
> prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) address rescission effects and provides:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor
> shall return any money or property that has been given to anyone in connection with the
> transaction and shall take any action necessary to reflect the termination of the security
> interest.

> (3) If the creditor has delivered any money or property, the consumer may retain
> possession until the creditor has met its obligation under paragraph (d)(2) of this section.
> When the creditor has complied with that paragraph, **the consumer shall tender the
> money or property to the creditor** or, where the latter would be impracticable or
> inequitable, tender its reasonable value. At the consumer's option, tender of property may
> be made at the location of the property or at the consumer's residence. Tender of money
> must be made at the creditor's designated place of business. If the creditor does not take
> possession of the money or property within 20 calendar days after the consumer's tender,
> the consumer may keep it without further obligation.  (Bold added.)

23       Neither TILA nor its Regulation Z, 12 C.F.R. §§ 226, et seq., "'establishes that a borrower's

24   mere assertion of the right of rescission has the automatic effect of voiding the contract.'" *Yamamoto

25   v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing

26   Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).  The Ninth Circuit Court of Appeals, relying on

27   *Large*, explained:

> Instead, the "natural reading" of the language of § 1635(b) "is that the security interest

10

becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

A rescission notice is not automatic "without regard to whether the law permits [borrower] to rescind on the grounds asserted." *See Yamamoto*, 329 F.3d at 1172. Entertaining rescission automatically "makes no sense . . . when the lender contests the ground upon which the borrower rescinds." *Yamamoto*, 329 F.3d at 1172. "In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any." *Yamamoto*, 329 F.3d at 1172 (italics in original).

Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest and return of the money within twenty days of the notice of rescission, we believe this assumes that the notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007). A "court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1173. The Ninth Circuit has explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may require borrowers to prove ability to repay loan proceeds:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.

11

1  1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds

2  given the lender's non-egregious TILA violations and equities heavily favoring the lender).[4]

3      Neither the complaint nor record references Mr. and Mrs. Hamilton's tender of indebtedness or

4  meaningful ability to do so.  The record's silence on Mr. and Mrs. Hamilton's tender of or ability to

5  tender amounts outstanding is construed as their concession of inability to do so.  Without Mr. and Mrs.

6  Hamilton's meaningful tender, Mr. and Mrs. Hamilton seek empty remedies, not capable of being

7  granted.  In addition, the complaint does not address conditions precedent to permit rescission even

8  under TILA.  The complaint is not a timely, valid rescission notice. "Clearly it was not the intent of

9  Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to

10 indefinitely extend the loan without interest." *American Mortgage*, 486 F.3d at 820-821.  Without Mr.

11 and Mrs. Hamilton's meaningful tender, their claims are doomed.

12                                    **Foreclosure Sale Presumption**

13      Defendants contend that Mr. and Mrs. Hamilton are unable to overcome the presumption of the

14 foreclosure sale's validity to negate their global claims.

15      Mr. and Mrs. Hamilton respond with frivolous claims that defendants did not establish "the

16 requisite chain of title to show 'standing,'" defendants "never had, any standing or legitimate right to

17 foreclose," "DEFENDANTS do not have any right to receive payments, foreclose on property, [or] sell

18 property," "the sale could not be valid if DEFENDANTS were not the legal owners of the property," and

19 documents "are defective and, perhaps, even predicated on fraud." Mr. and Mrs. Hamilton appear to rely

20 on non-analogous decision from other states and which are not binding on this Court.

21      Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of

22 trust with a power of sale clause. "Financing or refinancing of real property is generally accomplished

---

23

24      [4]      The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not
   compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

25          Congress did not intend to require a lender to relinquish its security interest when it is now known that the
26          borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender
            in discharging the prior obligations of the borrowers.

27 *Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

28

in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000). A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the applicable California Civil Code sections:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

"A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777. "As a general rule, a trustee's sale is complete upon acceptance of the final bid." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436 (2003). "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is

conclusive as to a bona fide purchaser." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted).  "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'" *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)).  "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity." *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

To challenge foreclosure, "it is necessary for the complaint to state a case within the code sections for which reason it is essential to allege the facts affecting the validity and invalidity of the instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940).  A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).

The complaint lacks facts of a specific statutory irregularity or misconduct in the foreclosure proceedings.  The complaint's conclusory allegations provide nothing to support a discrepancy in the foreclosure process to warrant dismissal of claims.  Mr. and Mrs. Hamilton's claims regarding MERS are unsupported and based on unreliable authority.  The complaint lacks no allegations to overcome the presumption of the foreclosure sale's validity.

**Real Estate Settlement And Procedures Act**

The complaint's first claim is entitled "Violation of the Rosenthal Fair Debt Collection Practices Act Under California Civil Code § 1788."  Defendants correctly note that the claim essentially alleges violation of the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq.  The claim accuses defendants of refusal "to comply with Plaintiffs' qualified written request [("QWR")]" under RESPA, in particular, 12 U.S.C. § 2605(e).

Mr. and Mrs. Hamilton re-assert their frivolous point that defendants lack a right to foreclose "because whatever rights the DEFENDANTS have were derived from MERS."

Under RESPA, a QWR is a "written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan."  12 U.S.C. § 2605(e)(1)(A).  Among other things, a QWR must include a "statement of the reasons for the belief of the borrower, to the extent applicable,

1   that the account is in error or provides sufficient detail to the servicer regarding other information sought

2   by the borrower."  12 U.S.C. § 2605(e)(1)(B)(ii).

3       Defendants point to the absence of Mr. and Mrs. Hamilton's legitimate QWR and allegations to

4   that effect given that their written request fails to address loan servicing under RESPA.  Defendants fault

5   Mr. and Mrs. Hamilton's lack of "identifiable inquiry as to the account balance or credit for payments."

6       Defendants are correct.  The complaint fails to plead or identify a viable or legitimate QWR.

7       Defendants further attack the complaint's failure to allege RESPA damages.  "Whoever fails to

8   comply with this section shall be liable to the borrower . . . [for] any actual damages to the borrower as

9   a result of the failure . . ."  12 U.S.C. § 2605(f)(1)(A).  "However, alleging a breach of RESPA duties

10   alone does not state a claim under RESPA.  Plaintiffs must, at a minimum, also allege that the breach

11   resulted in actual damages."  *Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D. N.J.

12   2006).

13       A purported RESPA claim fails to allege pecuniary loss from defendant's failure to respond to

14   a QWR or otherwise.  Such omission is fatal to the claim's reliance on a RESPA violation or defendants'

15   failure to respond to Mr. and Mrs. Hamilton's "demands."  A purported RESPA claim is doomed in the

16   absence of allegations of Mr. and Mrs. Hamilton's identifiable damages attributable to a RESPA

17   violation.

18                                          **Accounting**

19       The complaint's first claim alleges that Mr. and Mrs. Hamilton "demanded, in writing" that

20   Chase "provide a detailed accounting . . . of how the stated amount necessary to be paid to redeem the

21   property from foreclosure had been calculated so that the Plaintiffs could adequately know if their

22   right(s) under the law as to Plaintiffs' presale right of redemption."  Mr. and Mrs. Hamilton claim that

23   they attempt "to identify the true creditors/investors or beneficiaries of the note and the Deed of Trust."

24       An accounting cause of action is equitable and may be sought where the accounts are so

25   complicated that an ordinary legal action demanding a fixed sum is impracticable.  *Civic Western Corp.*

26   *v. Zila Industries, Inc.,* 66 Cal.App.3d 1, 14, 135 Cal.Rptr. 915 (1977).  A suit for an accounting will not

27   lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law.

28   *Civic Western,* 66 Cal.App.3d at 14, 135 Cal.Rptr. 915.  An accounting will not be accorded with respect

1   to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain. *Civic Western,*

2   66 Cal.App.3d at 14, 135 Cal.Rptr. 915.

3       "A right to an accounting is derivative; it must be based on other claims." *Janis v. California*

4   *State Lottery Com.*, 68 Cal.App.4th 824, 833-834, 80 Cal.Rptr.2d 549 (1998). Moreover, as an equitable

5   matter, an accounting frequently "presents a fiduciary relation between the parties in the nature of a trust

6   which brings it especially within equitable remedies." *Kritzer v. Lancaster*, 96 Cal.App.2d 1, 6, 214

7   P.2d 407 (1950). "The situation presented by an action for an accounting is unique in that the issues

8   raised by the pleadings may be only those with relation to the existence of the copartnership or other

9   relationship which requires an accounting and the statement that some balance is due plaintiff." *Whann*

10   *v. Doell*, 192 Cal. 680, 684, 221 P. 899 (1923). Sufficient grounds for an accounting are shown with

11   allegations "that the defendant was the trusted agent of the plaintiff, acting in a fiduciary capacity, and

12   having for a long period of time the entire charge and control of plaintiff's business, and that by various

13   kinds of misconduct which are specially described, defendant caused losses and became liable in various

14   sums of money, the true amounts of which cannot be ascertained and determined without an

15   accounting." *Kritzer v. Lancaster*, 96 Cal.App.2d 1, 6-7, 214 P.2d 407 (1950).

16       The complaint lacks allegations of complexity or a fiduciary relationship to warrant an

17   accounting to Mr. and Mrs. Hamilton. "A debt is not a trust and there is not a fiduciary relation between

18   debtor and creditor as such." *Downey v. Humphreys,* 102 Cal.App.2d 323, 332, 227 Cal.Rptr. 484

19   (1951). "The same principle should apply with even greater clarity to the relationship between a bank

20   and its loan customers." *Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 476, 261 Cal.Rptr. 735

21   (1989). Moreover, the complaint does not allege that defendants owe Mr. and Mrs. Hamilton money

22   to invoke an accounting. Mr. and Mrs. Hamilton lack a derivative basis for an accounting given the

23   failure of her claims. The complaint fails to invoke this Court's equity powers to provide Mr. and Mrs.

24   Hamilton accounting relief to warrant dismissal of a purported accounting claim.

25   **Rosenthal Fair Debt Collection Practices Act**

26       Defendants fault a purported claim under the Rosenthal Fair Debt Collection Practices Act

27   ("RFDCPA"), Cal. Civ. Code, §§ 1788, et seq., given the complaint's failure "to identify sections of the

28   RFDCPA that the Defendants allegedly violated" and "to allege facts that would support the inference

1   that defendants are 'debt collectors' under the RFDCPA."

2          In response, Mr. and Mrs. Hamilton repeat their frivolous points regarding MERS.

3          The RFDCPA's purpose is "to prohibit debt collectors from engaging in unfair or deceptive

4   practices in the collection of consumer debts and to require debtors to act fairly in entering into and

5   honoring such debts." Cal. Civ. Code, § 1788.1(b). The RFDCPA defines "debt collector" as "any

6   person who, in the ordinary course of business, regularly, on behalf of himself or herself or others,

7   engages in debt collection." Cal. Civ. Code, § 1788.2(c). "[F]oreclosure does not constitute debt

8   collection under the RFDCPA." *Izenberg v. ETS Services, LLC*, 589 F.Supp.2d 1193, 1199 (C.D. Cal.

9   2008). The "law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection

10  within the meaning of the RFDCPA or the FDCA [Fair Debt Collection Practices Act, 15 U.S.C. §§

11  1692, et seq.]." *Gamboa v. Trustee Corps*, 2009 WL 656285, * 4 (N.D. Cal. 2009). As this Court has

12  explained previously, "[l]ogic suggests that non-judicial foreclosure is not a debt collector's act under

13  California Civil Code section 1788.2(c)." *Swanson v. ECM Mortgage Corp.*, 2009 WL 3627925 (E.D.

14  Cal. 2009).

15         Defendants fault the complaint's failure establish "debt collector" liability in the absence of

16  essential elements that the DOT memorializes a "consumer credit transaction" and that the amount owed

17  under the DOT is a "consumer debt."

18         Defendants are correct. A purported RFDCPA claim is barred in that complaint points to only

19  non-judicial foreclosure, which as discussed above is proper pursuant to the DOT's power of sale

20  provision. Moreover, the claim is doomed with failure to allege applicable RFDCPA violations or

21  violated RFDCPA sections. The complaint's mere reference to California Civil Code section 1788 is

22  unavailing given the propriety of non-judicial foreclosure and the lack of defendants' debt collector

23  status under RFDCPA. A purported RFDCPA claim is subject to dismissal.

24                                    **Quiet Title**

25         The complaint's (second) quiet title claim alleges that "Defendants have no right, title, interest,

26  or estate in the subject property, and had no lawful right to conduct a foreclosure sale as either

27  beneficiary or trustee."

28         Defendants attack the complaint's failure to allege required elements for a quiet title claim in

                                             17

that, among other things, the complaint fails to address Mr. and Mrs. Hamilton's necessary tender of amounts owed on their loan.  Mr. and Mrs. Hamilton respond that "there is an absolute need to quiet title to the subject property because there is a cloud on its title."

California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein."  California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

1.  A legal description and street address of the subject real property;

2.  The title of plaintiff as to which determination is sought and the basis of the title;

3.  The adverse claims to the title of the plaintiff against which a determination is sought;

4.  The date as of which the determination is sought; and

5.  A prayer for the determination of the title of the plaintiff against the adverse claims.

The complaint fails to establish "adverse claims" to Mr. and Mrs. Hamilton's title.  Defendants hold no claim adverse to Mr. and Mrs. Hamilton's title in that a deed of trust "carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in payment of his debt."  *Lupertino v. Carbahal*, 35 Cal.App.3d 742, 748, 111 Cal.Rptr. 112 (1973).  The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property."  Cal. Code Civ. Proc., § 760.030.  Defendants lack an interest in the property subject to a quiet title claim.

As explained above, a quiet title claim is doomed in the absence Mr. and Mrs. Hamilton's tender of amounts owed.  "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."  *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").  With the complaint's absence of a meaningful ability or willingness to tender Mr. and Mrs. Hamilton's indebtedness, a purported quiet title claim fails.

**Predatory Lending**

The complaint's (third) predatory lending claims refers to TILA and its implementing Regulation

1    Z, the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602(aa), 1610, 1639, and

2    1640, California Business and Professions Code section 17200.  Plaintiffs claim that "[p]redatory

3    lending practices can only be established through extensive discovery."

4                                              ***TILA***

5           Defendants argue that they are not subject to a claim under TILA which "is only applicable

6    against creditors."

7           Under TILA, a "creditor" refers "only to a person who both (1) regularly extends, whether in

8    connection with loans, sales of property or services, or otherwise, consumer credit . . ., and (2) is the

9    person to whom the debt arising from the consumer credit transaction is initially payable on the face of

10   the evidence of indebtedness . . ."

11          Defendants are correct that the complaint lacks facts to establish defendants as creditors to bar

12   a TILA claim.

13          Defendants further attack a TILA damages claim as time barred.

14          A TILA damages claim is subject to 15 U.S.C. § 1640(e), which provides that an action for a

15   TILA violation must proceed "within one year from the date of the occurrence of the violation."  "TILA

16   requires that any claim based on an alleged failure to make material disclosures be brought within one

17   year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d

18   1176, 1183 (D. Or. 2005).  The limitations period runs from the date of a transaction's consummation

19   which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v.*

20   *Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008).  The Ninth

21   Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

22                  The failure to make the required disclosures occurred, if at all, at the time the loan
                    documents were signed.  The [plaintiffs] were in full possession of all information
23                  relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day
                    the loan papers were signed.
24

25          Mr. and Mrs. Hamilton consummated her loan on August 19, 2005 and filed their complaint on

26   August 23, 2010, more than five years after their loan transaction, to render a TILA damages claim time

27   barred.

28   / / /

                                                    19

### *HOEPA*

Defendants challenge the complaint's failure to identify a loan subject to HOEPA.  Defendants note that HOEPA applies when a loan's annual percentage rate at consummation exceeds by more than 10 percent the applicable yield on treasury securities, or when the total points and fees payable by the consumer exceed eight percent of the "total loan amount," or $400, whichever is greater. 15 U.S.C. § 1602(aa)(1), (3); 12 C.F.R. § 226.32(a)(1).  A plaintiff "must allege facts supporting a conclusion that HOEPA applies to the Loan, under the requirements of [15 U.S.C.] § 1602(aa)."  *Enriquez v. J.P. Morgan Chase Bank, N.A.*, 2009 WL 160245, at *5 (D. Nev. 2009); *see Marks v. Chicone*, 2007 WL 160992, at *8 (N.D. Cal. 2007) (dismissing HOEPA claim where " plaintiff has failed to allege facts sufficient to establish that the subject loan was a high-risk loan subject to HOEPA"); *Justice v. Countrywide Home Loans, Inc.*, 2006 WL 141746, at *2 (E.D. Tenn. 2006) (dismissing HOEPA claim in that "the bare incantation of statutory terms, without corresponding allegations to support recovery, does not state a claim").

The complaint lacks a purported  HOEPA claim in absence of allegations that Mr. and Mrs. Hamilton's loan rate or fees exceeded the threshold to invoke HOEPA.  The complaint's mere allegation of a HOEPA violation is insufficient to warrant dismissal of a purported HOEPA claim.

In addition, a purported HOEPA claim's futility is further illustrated by the applicable one-year limitations period.  "HOEPA is an amendment of TILA, and therefore is governed by the same remedial scheme and statutes of limitations as TILA."  *Kemezis v. Matthew*, 2008 WL 2468377, at *3 (E.D. Pa. 2008).  Mr. and Mrs. Hamilton's HOEPA damages claim is barred by the one-year limitations of 15 U.S.C. § 1640(e) in that their loan closed more than five years before he filed this action.

### *Business And Professions Code Section 17200*

Defendants contend that Mr. and Mrs. Hamilton lack standing to pursue a claim under the Unfair Competition Law ("UCL") of California Business and Professions Code §§ 17200, et seq.

California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition."

Business and Professions Code section 17203 addresses UCL relief and provides in pertinent

1   part:

2        Any person who engages, has engaged, or proposes to engage in unfair
     competition may be enjoined in any court of competent jurisdiction. The court may make
3    such orders or judgments . . . as may be necessary to restore to any person in interest any
     **money or property**, real or personal, which may have been acquired by means of such
4    unfair competition.  (Bold added.)

5        "In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's

6   remedies are 'generally limited to injunctive relief and restitution.'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939,

7   950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

8   *Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

9        Defendants correctly note the complaint's absence of facts of Mr. and Mrs. Hamilton's money

10   or property allegedly lost due to a UCL violation.  Mr. and Mrs. Hamilton's claims of lending and

11   appraisal fees and loan payments are unavailing and unsupported with pertinent legal authority.

12   Defendants are correct that Mr. and Mrs. Hamilton "have suffered no damages as they are delinquent

13   on their mortgage, and continue to live rent-free" on the property.  The complaint lacks sufficient

14   allegations of Mr. and Ms. Hamilton's standing to warrant dismissal of the UCL claim.

15        Defendants further fault the complaint's failure to allege a predicate legal violation to support

16   a UCL claim.

17        The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state,

18   or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832,

19   838, 33 Cal.Rptr.2d 548 (1999).  The UCL "thus creates an independent action when a business practice

20   violates some other law." *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121

21   Cal.Rptr.2d 79 (2002).  According to the California Supreme Court, the UCL "borrows" violations of

22   other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins.*

23   *Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992).

24        A fellow district court has explained the borrowing of a violation of law other than the UCL:

25        To state a claim for an "unlawful" business practice under the UCL, a plaintiff
     must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles*
26   *Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999)
     (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows'
27   violations of other law and treats them as unlawful practices that the unfair competition
     law makes independently actionable.") (citation omitted). Where a plaintiff cannot state
28   a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith*

21

1    *v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d
     399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her
2    TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA
     has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.
3

4    *Rubio v. Capital One Bank (USA), N.A.*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

5        "A plaintiff alleging unfair business practices under these statutes [UCL] must state with

6    reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's*

7    *of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

8        The complaint is insufficient to establish that defendants engaged in unfair business practices

9    under the UCL.  In the absence of violation of a borrowed law, a UCL claim fails in that it cannot rest

10   on alleged irregularities in the loan transaction or completed foreclosure proceedings.  The complaint

11   lacks claims under the federal and state statutes addressed above.  The complaint points to no predicate

12   violation of law.  The complaint lacks reasonable particularity of facts to support a UCL claim.  The

13   complaint's bare reference to federal and state statutes and common law remedies provides not the

14   slightest inference that Mr. and Mrs. Hamilton have a viable UCL claim.  The UCL claim lacks

15   particularity of fraudulent circumstances, such as a misrepresentation, for a UCL claim.  The complaint

16   lacks allegations of ongoing wrongful business conduct or a pattern of such conduct.  The complaint

17   lacks facts to hint at a wrong subject to the UCL to warrant dismissal of a purported UCL claim against

18   defendants.

19                                     **Declaratory Relief**

20       The complaint's (fourth) declaratory relief claim alleges that the "non-judicial foreclosure sale

21   . . . is improper, in that Defendants are not the holders of the original note secured by the subject

22   property" and "are not the holders of any properly endorsed assignment of the same original note."  The

23   declaratory relief claim seeks "judicial determination" of the validity of "Defendants' right to proceed

24   with non-judicial foreclosure of the subject property."

25       Defendants argue that the declaratory relief claim fails in that Mr. and Mrs. Hamilton seek "to

26   redress past wrongs, rather than declaration of [their] future rights."  Defendants fault the complaint's

27   lack of "facts or legal theory that show an actual controversy" between the parties.

28       Mr. and Mrs. Hamilton respond that "people who may later want to buy the subject property, will

                                           22

1   never know the identity of the true holder in due course."

2          The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

3              In a case of actual controversy within its jurisdiction . . . any court of the United
       States, upon the filing of an appropriate pleading, may declare the rights and other legal
4      relations of any interested party seeking such declaration, whether or not further relief
       is or could be sought.  Any such declaration shall have the force and effect of a final
5      judgment or decree and shall be reviewable as such.

6   28 U.S.C. §2201(a).

7          The DJA's operation "is procedural only."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,

8   300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery."

9   *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA

10  "merely offers an *additional remedy* to litigants."  *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21

11  (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is

12  a case of actual controversy within its jurisdiction."  *American States Ins. Co. v. Kearns*, 15 F.3d 142,

13  143 (9th Cir. 1994).

14         As to a controversy to invoke declaratory relief, the question is whether there is a "substantial

15  controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

16  the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

17  273, 61 S.Ct. 510, 512 (1941).  The United States Supreme Court has further explained:

18             A justiciable controversy is thus distinguished from a difference or dispute of a
       hypothetical or abstract character; from one that is academic or moot. . . . The
19     controversy must be definite and concrete, touching the legal relations of parties having
       adverse legal interests. . . . It must be a real and substantial controversy admitting of
20     specific relief through a decree of a conclusive character, as distinguished from an
       opinion advising what the law would be upon a hypothetical state of facts.
21

22  *Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

23         The failure of the complaint as a whole demonstrates the absence of an actual controversy subject

24  to declaratory relief.  A declaratory relief action "brings to the present a litigable controversy, which

25  otherwise might only be tried in the future."  *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655

26  F.2d 938, 943 (9th Cir. 1981).  In the absence of a viable claim, the complaint fails to support declaratory

27  relief.

28         Defendants further take issue with Mr. and Mrs. Hamilton's attempt to seek declaratory relief

23

1   based on a notion that defendants lack possession of their original promissory note.

2       "Under Civil Code section 2924, no party needs to physically possess the promissory note."

3   *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, §

4   2924(a)(1)). Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and

5   election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.  An "allegation that

6   the trustee did not have the original note or had not received it is insufficient to render the foreclosure

7   proceeding invalid."  *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

8       A purported challenge to produce an original note is unsupported.  The record lacks facts of

9   failure to comply with the statutory scheme for non-judicial foreclosure.  A purported unlawful

10  foreclosure claim fails as a matter of law, especially in the absence of allegations of misconduct in the

11  foreclosure proceedings to further doom Mr. and Mrs. Hamilton's declaratory relief claim.

12                          **Injunctive Relief**

13      The complaint's (fifth) injunctive relief claim seeks a preliminary injunction "as to any non-

14  judicial foreclosure or other sale of the subject property" in that "MERS did not have the authority to

15  transfer any interest" in the property.

16      Defendants contend that Mr. and Mrs. Hamilton improperly seek equitable relief with "unclean

17  hands" in that they fail to tender the amount owed on their loan.  Defendants attack injunctive relief as

18  moot in that the property has been sold.

19      Mr. and Mrs. Hamilton respond that if defendant lack foreclosure powers, "an injunction must

20  be issued to stop the DEFENDANTS from wrongfully and illegally evicting" Mr. and Mrs. Hamilton.

21      "Equity will not interpose its remedial power in the accomplishment of what seemingly would

22  be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there

23  has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen*,

24  *v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). "Injunctive relief is

25  a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief

26  may be granted."  *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942).

27      The complaint lacks facts to support injunctive relief, especially given the absence in the record

28  of foreclosure irregularities.  No viable claim supports injunctive relief to doom injunctive relief for Mr.

1   and Mrs. Hamilton.  In other words, injunctive relief fails with the complaint's claims.

2   **Further Grounds For Dismissal**

3   The above discussion demonstrates that Mr. and Mrs. Hamilton lack a viable claim under their

4   complaint's theories.  Defendants have sufficiently vitiated Mr. and Mrs. Hamilton's claims, and this

5   Court construes Mr. and Mrs. Hamilton's absence of meaningful opposition as their concession that their

6   claims fail.  As defendants explain, the complaint's California and federal statutory claims fail as barred

7   legally or by limitations periods.  The complaint's purported state law claims are barred legally for

8   reasons discussed above and by defendants.  In light of this Court's above discussion and the grounds

9   raised by defendants, Mr. and Mrs. Hamilton lack a viable claim.

10   **Attempt At Amendment And Malice**

11   Since the complaint's claims are insufficiently pled and barred as a matter of law, Mr. and Mrs.

12   Hamilton are unable to cure their claims by allegation of other facts and thus are not granted an attempt

13   to amend.

14   Moreover, this Court surmises that Mr. and Mrs. Hamilton has brought this action in absence of

15   good faith and that Mr. and Mrs. Hamilton exploit the court system solely for delay or to vex defendants.

16   The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of

17   the applicant."  *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*,

18   795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court

19   has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack

20   of good faith or malice also can be inferred from a complaint containing untrue material allegations of

21   fact or false statements made with intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212

22   (8th Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action against

23   defendants.

24   **CONCLUSION AND ORDER**

25   For the reasons discussed above, this Court:

26   1.      DISMISSES with prejudice this action against defendants;

27   2.      DIRECTS the clerk to enter judgment in favor of defendants JP Morgan Chase Bank,

28           N.A. and Mortgage Electronic Registration Systems, Inc. and against plaintiffs Edward

1     B. Hamilton and Anne Marie Hamilton in that there is no just reason to delay to enter

2     such judgment given that Mr. and Mrs. Hamilton's claims against defendants and

3     defendants' alleged liability are clear and distinct from claims against and liability of

4     other defendants.  *See* F.R.Civ.P. 54(b); and

5     3.     ORDERS Mr. and Mrs. Hamilton's counsel, no later than October 29, 2010, to file

6     papers to show cause why this Court should not dismiss this action against defendants

7     Bank of Blue Valley, Quality Loan Service Corp., and Washington Mutual Bank FA.

8     **This Court ADMONISHES Mr. and Mrs. Hamilton and their counsel that this Court will**

9     **dismiss this action against defendants Bank of Blue Valley, Quality Loan Service Corp., and**

10    **Washington Mutual Bank FA if Mr. and Mrs. Hamilton and/or their counsel fail to comply with**

11    **this order and fail to file timely papers to show cause why this Court should not dismiss this action**

12    **against defendants Bank of Blue Valley, Quality Loan Service Corp., and Washington Mutual**

13    **Bank FA.**

14    IT IS SO ORDERED.

15    **Dated:     October 20, 2010                           /s/ Lawrence J. O'Neill**
                                                       UNITED STATES DISTRICT JUDGE

26